Filed 7/24/26  Mahil v. Copelin CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HARJIT MAHIL, | D086964 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2023-00051237-CU-BC-NC) |
| v. | |
| MICHAEL COPELIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Andrews Law Group and Brian C. Andrews, for Defendant and Appellant.

Harjit Mahil, in pro. per., for Plaintiff and Respondent.

## I.  INTRODUCTION

Harjit Mahil, representing herself, sued Michael Copelin for the value of personal belongings Mahil left behind in Copelin's house after they broke up and Copelin instructed Mahil to move out on short notice.  Mahil asserted a single cause of action for "common counts" and further alleged "[t]heft."

After a short bench trial at which Mahil was the only witness, the court found in her favor and awarded her more than $50,000 in damages.

On appeal, Copelin contends the trial court erred by denying his motion for judgment on the pleadings, in which he argued that Mahil's complaint failed to allege the essential elements of a common counts claim. He also maintains that the court erred by denying his motion for nonsuit, which similarly argued Mahil failed to adduce evidence establishing a common counts claim. On this point, he argues the trial court erred by basing its ruling on documents that were not formally admitted as exhibits at trial. For reasons we will explain, we reject these contentions and affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Pleadings

On November 22, 2023, Mahil filed a complaint against Copelin using a Judicial Council form for contract claims. She checked a box in the "causes of action" section of the form indicating she was asserting "Common Counts," and in the "Other allegations" section of the form she wrote, "Theft." The causes of action section of the form instructs that "each complaint must have one or more causes of action attached." Although Mahil did not attach a Judicial Council cause of action form for a common count claim (see Judicial Council form PLD-C-001(2) [Rev. Jan. 1, 2009]), she attached a verified declaration that included 88 pages of exhibits.

In her declaration, Mahil stated that she and Copelin began dating in January 2012, had a daughter together in 2015, and broke up in November 2020. When they broke up, Copelin gave Mahil a 30-day notice to vacate his residence. Six days into that 30-day period, on November 24, 2020, Copelin's lawyer notified Mahil that, due to a restraining order Copelin obtained

2

against Mahil, she and the couple's daughter needed to leave by 6 p.m. that day. The lawyer warned in an email, "We would like to avoid having the Sheriff escort Ms. Mahil and their daughter out of the residence at that time." The notice to vacate and the lawyer's email are attached to Mahil's declaration.

As Mahil further explained in her declaration, in December 2020, the court ordered that she be allowed to return to Copelin's house to retrieve a to-be-determined list of personal belongings. But instead of allowing Mahil access to her belongings in his house, Copelin put some of them in a storage unit (with one months' rent paid) and "scattered" others on the driveway.

Mahil determined that certain of her personal belongings were not among the belongings placed in storage or on the driveway. She explained in her declaration that after her mother died in July 2020, Mahil traveled to Canada for the funeral and returned home with a box of items she collected from her mother's safe deposit box. These items included gold bars, gold jewelry, and paperwork for a real estate investment.

In April 2023, a few months before Mahil filed this lawsuit, her then-attorney sent Copelin a list itemizing Mahil's unreturned personal property. This list included (among other things) about $30,000 worth of furniture from Pottery Barn, two designer handbags worth about $5,000, and four 2-ounce gold bars (from the mother's safe deposit box) valued at $20,000. Mahil attached the list, along with receipts for the furniture and handbags, to her declaration.

Mahil's complaint requested $46,000 in damages, $13,800 in prejudgment interest, $5,000 in attorney fees, and $50,000 in punitive damages.

3

Copelin filed an answer to the complaint. He asserted a general denial and a variety of affirmative defenses. He did not file a demurrer or otherwise test the sufficiency of the complaint.

## B. Trial

In June 2025, the court called the matter for trial. Mahil appeared; Copelin did not. After hearing Mahil's testimony, the court awarded her $119,000, consisting of $68,000 in damages, $50,000 in punitive damages, and $1,000 in costs. The court entered judgment for Mahil but later granted Copelin's motion to vacate the judgment based on mistake or excusable neglect. The court rescheduled trial.

In preparation for the continued trial, Copelin requested that the court take judicial notice of court records from certain criminal proceedings, domestic violence restraining order proceedings, and protracted and contentious family court proceedings.

The court held a bench trial on September 3, 2025. Mahil represented herself; Copelin appeared with counsel. Mahil presented the court with "an updated list of the breakdown" of her damages claim.[1] She clarified that when she prepared the update, she "didn't realize that the price of gold is 1.75 now," so the value of the gold and prejudgment interest would be "much higher." After opening statements, Mahil testified as the only witness. She testified on direct examination in narrative fashion and was subject to several rounds of cross-examination by Copelin's counsel.

Mahil described the relevant events largely as she described them in her complaint and attached declaration. The couple broke up in November

---

[1]     Neither the original list nor the update are in the appellate record.

4

2020, just after the furniture Mahil purchased was delivered to Copelin's house. Mahil testified about the notice from Copelin's lawyer giving her 30 days to move out, the warning email six days later to vacate immediately, the court's order allowing her to return to collect personal belongings, and Copelin putting her belongings in storage and on the driveway. Mahil also described the unreturned furniture, handbags, and items from her mother. Although Mahil did not testify to their value, she stated, "You guys have a list of the financial loss." Copelin did not object.

On cross-examination, Copelin's counsel questioned Mahil extensively about the gold bars — whether they existed, why she did not take them when she moved out, and why she waited so long into the litigation to claim they were missing. Copelin's lawyer questioned Mahil about certain of her exhibits and mentioned a "bench book" of exhibits "shared' with the court.

Once Mahil rested her case, Copelin's lawyer made two oral motions. First, he moved for judgment on the pleadings on the basis that Mahil's complaint did "not allege that Mr. Copelin requested anything or that he received it for his benefit, both of which are critical elements in a common counts cause of action." Second, Copelin moved for nonsuit on the similar basis that "there's been no testimony" on the common count elements "that Mr. Copelin asked [Mahil] to purchase anything or that he ever received it for his benefit."

When the court asked Mahil to identify the evidence "that supports [her] cause of action," she responded: "I didn't receive my things or the opportunity to retrieve them and he kept them. They're mine. And I have receipts. They're all in the exhibits."

The trial court denied the defense motions. The court explained:

5

So, it is a little tricky because the complaint . . . is not the most perfect document in the world.

The Court at this point is going to deny the request. I'm not making a finding for the plaintiff. But her evidence is, "I had these things. I got kicked out." And despite going back and forth — I can follow the calendaring on everything. It's in your exhibits. That when she got whatever she did receive, these things weren't included.

I understand your cross-examination that she didn't ask for those things at the time. That, of course, goes into weighing the evidence. That doesn't go into the nonsuit.

I also think that in light of the history of this case, any review of it at a later time is best served by having all the evidence out at one time.

After the court ruled, Copelin rested without presenting any evidence. The trial court explained to Mahil the significance of this and further explained how the court would prepare its ruling:

So what they're saying is they're not going to put on any evidence. What we have before the Court is what the Court is going to consider, and I will make a decision.

So I'm going to go back and read through — you guys bounced around through a lot of pages of the exhibits. I want to go back and go through those. And I will try to have a decision out for you. I'm going to try to get it out by the end of the day tomorrow.

Obviously, I had all afternoon planned for you guys, so I'm going to take that time and spend it going through the exhibits and the pleadings that you filed, okay?

Copelin's attorney did not object to this procedure.  Rather, he confirmed only that the court would issue a written statement of decision.

### C.  Statement of Decision

Two days after the trial, the court issued an initial statement of decision.  Mahil requested minor modifications to clarify certain dates; Copelin requested no modifications.  The court issued its final statement of decision on September 29, 2025.

The statement of decision provided a chronology of the key events described at trial, basing the dates on "testimony, documents provided, and the judicially noticed family law" cases between the parties.  The court found that Mahil — whose testimony the court expressly found credible — was sufficient to prove by a preponderance of the evidence "that [her] personal items were left at the premises when she was forced to leave."  And while the court found that her complaint was "not a model of perfect pleading," it nevertheless was "sufficient to put the defense on notice of the claims."  Accordingly, the court awarded Mahil $54,895 "for the gold, furniture, and handbags."

The statement of decision elaborated on why the court found Copelin liable:  "Had [Copelin] allowed the 30 day notice to play out, it is unlikely this award would have been given.  However, by having ejected [Mahil], he essentially became the guardian of her property.  By then having it removed and stored, he is responsible for any loss, even if it were the storage facility (or its employees) that ultimately removed the property in question."

The court declined to award punitive damages.  The court explained that although Mahil presented evidence that Copelin "was motivated by animus," she presented no evidence regarding his financial condition.

7

The court found that Mahil was not entitled to attorney fees. The court allowed her to seek costs and interest by way of a postjudgment memorandum of costs or motion.

## D. Prejudgment Interest and Entry of Judgment

On October 2, 2025, three days after the court issued its statement of decision, Copelin filed a notice of appeal purporting to appeal from the statement of decision.

On January 30, 2026, the trial court granted Mahil's motion for prejudgment interest.[2] The court awarded $26,349.68, based on the "readily ascertainable market value" of Mahil's belongings from December 11, 2020 (the date the court ordered Copelin to allow her into his house to retrieve her belongings) to September 29, 2025 (the date of the final statement of decision).

In awarding prejudgment interest, the trial court rejected Copelin's argument that Mahil " 'presented no evidence of [her belongings'] value whatsoever nor even any evidence that they existed in the first place.' " The court found this argument was "contradicted by the fact the Court ultimately did place a value on the personal property at issue" and that Copelin "did not meaningfully challenge the value of the personal property in any factual way." Instead, the court noted, Copelin's "cross-examination of [Mahil] focused on credibility and truthfulness, not the value of the personal property items at issue."

---

[2]     We granted Copelin's motion to augment the record to include this order. Copelin did not move to augment the record to include the parties' trial court briefing on the issue, which is not in the appellate record.

On March 5, 2026, the trial court entered judgment for Mahil for $81,244.68, consisting of $54,895 in damages and $26,349.68 in prejudgment interest.[3]

## III.  DISCUSSION

### A.  The Trial Court Properly Denied Copelin's Motion for Judgment on the Pleadings

Copelin contends the trial court erred by denying his motion for judgment on the pleadings because Mahil failed to plead the essential elements of a common count cause of action.  We disagree.

#### 1.  Legal Principles

" 'A motion for judgment on the pleadings is tantamount to a general demurrer . . . and may be made at any time prior to a final judgment.' " (*Nelson v. Tucker Ellis, LLP* (2020) 48 Cal.App.5th 827, 839.)  " 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action.' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc*. (2014) 59 Cal.4th 772, 777.)  "We assume the truth of the properly pleaded factual allegations in the operative complaint and, based on those allegations, determine whether a valid cause of action is stated under any legal theory." (*Rodriguez v. City of Los Angeles* (2025) 116 Cal.App.5th 488, 495.)  "In doing so, we look past the form of the pleading to its substance and ignore any erroneous or confusing labels [the plaintiff] attached." (*Rosen v. St. Joseph Hospital of Orange County* (2011)

---

[3]     We granted Copelin's motion to augment the record to include the judgment.  We construed Copelin's notice of appeal from the final statement of decision as being taken from the judgment.

193 Cal.App.4th 453, 458; see *Malott v. Summerland Sanitary Dist.* (2020) 55 Cal.App.5th 1102, 1110 ["A pleading should be judged by the substance of its allegations rather than its label."].) "We liberally construe the pleading with a view to substantial justice between the parties." (*State Water Resources Control Bd. v. Superior Court* (2025) 115 Cal.App.5th 734, 756–757; see *Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 566 (*Wittenberg*) ["The rationale for liberally construing pleadings is . . . rooted in the policy allowing a plaintiff to maintain a lawsuit if the plaintiff has, on any theory, properly pleaded facts indicating a valid cause of action."].) " 'A motion for judgment on the pleadings . . . is governed by the . . . de novo standard of review.' " (*Pac Anchor*, at p. 777.)

"A common count is not a specific cause of action . . . . [R]ather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) "In California, it has long been settled the allegation of claims using common counts is good against special or general demurrers. [Citation.] The only essential allegations of a common count are '(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment.' " (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 (*Zerin*); see 4 Witkin, Cal. Proc. 6th (2026) Pleading, § 565 ["Although other matters are often included, the cases make it clear that the only essential allegations are" those stated in *Zerin*].) Although an action on a common count " 'is one at law, it is governed by principles of equity.' " (*Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454.)

A common count claim can overlap with a tort claim for conversion. (See *Acme Paper Co. v. Goffstein* (1954) 125 Cal.App.2d 175, 179 [recognizing

10

a common count "action . . . for money had and received, based upon a conversion perpetrated by fraud and deceit"].)  " ' "Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion claim are:  (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." ' "  (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208 (*Welco*).)

### 2. Analysis

Based on our de novo review of Mahil's complaint, we conclude the trial court properly denied Copelin's motion for judgment on the pleadings because Mahil sufficiently alleged the essential elements of a common count claim.

To satisfy the first essential element — a " 'statement of indebtedness in a certain sum' " (*Zerin, supra*, 53 Cal.App.4th at p. 460) — Mahil alleged that Copelin was indebted to her in the amount of $46,000.  For the "consideration" element (*ibid.*), Mahil alleged — in a detailed, verified declaration with supporting exhibits attached — that Copelin retained Mahil's personal belongings by removing her from his house without providing her sufficient time to gather those belongings.  Finally, Mahil satisfied the "nonpayment" element (*ibid.*) by alleging that Copelin refused to return her belongings or to compensate her for their loss, despite her demands.  These allegations, liberally construed, are sufficient to state a common count claim.

As a closely related alternative to a common count claim, Mahil also satisfied the pleading requirements for a conversion cause of action against Copelin.  Mahil alleged her " ' "ownership . . . of the property" ' " at issue (*Welco, supra*, 223 Cal.App.4th at p. 208) by explaining in the declaration

11

attached to her complaint that she purchased the furniture and handbags and inherited the gold bars.  Mahil alleged Copelin's " ' "conversion . . . or wrongful disposition" ' " (*ibid.*) of her property by alleging "[t]heft" in the "[o]ther allegations" section of the form complaint and by explaining in her declaration the circumstances under which Copelin retained her belongings.  Finally, Mahil alleged she suffered "damages" (*ibid.*) of $46,000 based on the value of the converted property.

Under either a common count or conversion theory, we conclude Mahil alleged sufficient facts to state a cause of action and to provide sufficient notice to Copelin of the legal theories underlying her claim for relief.

None of Copelin's arguments to the contrary are convincing.  For example, Copelin suggests Mahil's claim "*might*" be one for a consumer debt within the meaning of Code of Civil Procedure section 425.30, which prohibits the use of common counts "[i]n an action for collection of consumer debt." (Code. Civ. Proc., § 425.30, subd. (a).)  Copelin forfeited this argument by failing to raise it in the trial court — he argued only that Mahil failed to allege certain elements of a common count claim.  (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1191–1192 (*Thompson*) [plaintiff forfeited an argument not raised in opposition to demurrer]; *Wittenberg, supra*, 51 Cal.App.5th at pp. 567–568 [courts may properly decline to consider arguments not raised in demurrer even if based on purely legal questions].) In any event, the argument is unpersuasive because the statute's definition of " 'consumer debt' " encompasses only (1) "obligation[s] to pay [that] appear[] on the face of a note or in a written contract" that (2) was "incurred on or after July 1, 2024."  (*Ibid.*, subd. (b).)  Neither of these requirements are met here because Copelin's indebtedness did not arise from a note or written

12

contract and it arose in December 2020, years before the statute's 2024 starting date.

Copelin also argues Mahil's complaint was defective on its face because she failed to attach a Judicial Council common count cause of action form. Again, Copelin forfeited this argument by failing to raise it in the trial court. (See *Thompson, supra*, 11 Cal.App.5th at pp. 1191–1192; *Wittenberg, supra*, 51 Cal.App.5th at pp. 567–568.) The argument also ignores that Mahil's verified declaration and exhibits provided more detail about the nature of her claim than the common count cause of action form would have.

Next, Copelin attacks the trial court's impartiality, asserting that the court "acted and ruled in a biased manner throughout." As examples, he cites the court's initial entry of judgment for Mahil after Copelin failed to appear for trial,[4] and the court's liberal interpretation of Mahil's complaint. Copelin forfeited any claim of judicial bias by failing to raise it in the trial court. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1320 ["As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review."]; *People v. Snow* (2003) 30 Cal.4th 43, 78 ["because counsel failed to object to, or seek a jury admonition regarding, any of the instances of alleged judicial intemperance, the issue is waived on appeal"].) And on the merits, "[t]he mere fact that the trial court issued rulings adverse

---

[4] In a lengthy footnote in his opening briefing, Copelin purports to explain the circumstances that led to the initial judgment, which the trial court later vacated on Copelin's motion. However, Copelin does not support his narrative with citations to evidence in the appellate record, as required. (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589 [stating the "cardinal principle[] of appellate review" that "[a]n appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference"].)

to [Copelin] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias." (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674.)

Copelin similarly attacks Mahil's character, asserting that her "complaint in this matter was not a bona fide attempt to assert any legal right(s)," but rather, was merely a continuation of "her history of vexatious filings" and "harassment." The trial court was aware of the parties' history of contentious litigation, including restraining orders against Mahil. Yet, the court expressly found Mahil credible on the claim asserted in this case. "It is not our role to reweigh the evidence" or "redetermine the credibility of the witnesses." (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173.) Furthermore, as we have explained, Mahil adequately alleged a valid legal claim.

Accordingly, we conclude the trial court properly denied Copelin's motion for judgment on the pleadings.

## B. The Trial Court Properly Denied Copelin's Motion for Nonsuit

Copelin also contends the trial court erred by denying his motion for nonsuit. He argues Mahil "admitted no documentary evidence before resting her case" and that "exhibits not moved into evidence cannot be considered." Copelin has not met his burden to show the trial court erred.

"A trial court may grant a motion for nonsuit if the plaintiff's evidence would not support a jury verdict in the plaintiff's favor. [Citation.] We review an order denying a motion for nonsuit de novo by using the same standard as the trial court, and will affirm the order so long as substantial

14

evidence supports the jury's verdict. [Citations.] In determining whether the plaintiff's evidence is sufficient, we do not weigh the evidence or assess witness credibility. [Citation.] We accept as true the evidence most favorable to the plaintiff, disregard conflicting evidence, and draw every legitimate inference from the evidence in the plaintiff's favor." (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1013 (*Crouch*).) "[D]efects not specifically pointed out by the moving party cannot be considered by the trial court, or by us, in determining the merits of the motion." (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 378 (*Lido Preferred*); see *Medina v. St. George Auto Sales, Inc.* (2024) 103 Cal.App.5th 1194, 1211, fn. 6 (*Medina*).) Rather, "we confine our review to the ground for nonsuit asserted in the trial court." (*Lido Preferred*, at p. 378.)

Copelin's appellate challenge fails at the outset because it rests on grounds he did not assert in the trial court. Specifically, Copelin moved for nonsuit on the basis that "there's been no testimony that Mr. Copelin asked [Mahil] to purchase anything or that he ever received it for his benefit." Copelin did not assert a lack of documentary support for Mahil's claims or object that the trial court could not consider exhibits not properly admitted. Because he did not base his nonsuit motion on these grounds, he cannot raise them on appeal. (See *Lido Preferred, supra*, 9 Cal.App.4th at p. 378; *Medina, supra*, 103 Cal.App.5th at p. 1211, fn. 6.)

Even if Copelin's new challenges were properly before us, we would find them unpersuasive. To the extent Copelin challenges Mahil's credibility or implies that her testimony required corroboration or documentary support, the challenge fails. (See *Crouch, supra*, 39 Cal.App.5th at p. 1013 ["we do not weigh the evidence or assess witness credibility"]; *In re Marriage of Mix*

15

(1975) 14 Cal.3d 604, 614 [" 'The testimony of a witness, even the party himself, may be sufficient.' "]; *Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1247 [" 'the testimony of a single witness is enough to prove a fact' "]; *Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 921 ["The opinion of an owner of personal property is in itself competent evidence of the value of that property, and sufficient to support a judgment based on that value."]; *Resort Video, Ltd. v. Laser Video, Inc.* (1995) 35 Cal.App.4th 1679, 1700 [" 'Evidence of cost, uncontradicted by other evidence, is sufficient to support a finding of value.' "].)

Copelin cites *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621 to support the proposition that "[u]ncorroborated testimony, even if deemed credible, cannot support a finding for high-value items absent documentary or physical evidence." This citation is unhelpful because Copelin did not provide a pinpoint citation and the cited proposition is not readily apparent. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 411 [case citations with "no jump cites to the pages of those cases where pertinent holdings purportedly exist" are "unhelpful"].)

As for Copelin's claim that Mahil introduced no exhibits before resting her case, the record contradicts the claim. At the outset of trial, Mahil provided the court with "an updated list of the breakdown" of her damages claim. She also referenced that document during her testimony. Similarly, Mahil testified about the exhibits attached to her complaint, and it is apparent from the overall context of the appellate record that the trial court had copies of these exhibits during Mahil's testimony. Copelin's counsel also questioned Mahil about several exhibits attached to her complaint and referenced a bench book of exhibits the parties apparently provided to the

16

trial court before trial.  We are therefore not persuaded that Mahil failed to introduce documentary evidence before resting her case.

Nor are we persuaded by Copelin's more technical argument that neither the trial court nor this court can consider these exhibits because they were not formally admitted in evidence during trial.  " 'It is well established . . . that when a document has been considered by the court and the parties as being in evidence, the fact that no formal offer in evidence was made will not exclude it from consideration as part of the record on appeal.  [Citations.]  "Where documents are not formally introduced, but it is apparent that the court and the offering party understood that they were in evidence, they must be so considered." ' "  (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 742, quoting *Reed v. Reed* (1954) 128 Cal.App.2d 786, 790–791; see *Komas v. Future Systems, Inc*. (1977) 71 Cal.App.3d 809, 812 ["The complaint and supporting documents were treated as part of the record before the trial court by both court and counsel, and it is clear that the trial court considered the documents in its decision.  The failure to formally and expressly offer the documents into evidence is not necessarily fatal, where the court and both parties treat the documents as if they were in evidence."]; *Walsh v. Walsh* (1952) 108 Cal.App.2d 575, 578–579 ["Respondent produced the document and handed it to the trial judge for his consideration at the hearing.  Counsel for appellant interrogated his client concerning the circumstances of its execution and the subsequent conduct of the parties as bearing upon its implied cancellation.  The court did consider it.  Thus, it is clear that the offering party and the court understood it was in evidence, and that appellant treated it as if it were in evidence.  Under such circumstances, the fact that the offer was not made in words expressly characterizing the offer as a formal tender of evidence does not deprive the document of its true

17

character as evidence."]; *Cohon v. Department of Alcoholic Beverage Control* (1963) 218 Cal.App.2d 332, 336, fn. 10 ["It is well established that where the record shows that a document has been considered by the court and the parties as being in evidence, a reviewing court will not look for technical reasons to exclude from consideration any part of the record which was before the court below."]; *Dodson v. Greuner* (1938) 28 Cal.App.2d 418, 423 ["We may not . . . hold [an exhibit] was not admitted in evidence" where "the record does not show that the trial court announced 'admitted' " but does show "many facts to the effect that both parties and also the trial court proceeded and treated the [exhibit] as being in evidence."].)

The record here shows that the parties and the trial court treated Mahil's documents as admitted as exhibits. Mahil provided them to the court before and during trial, testified about them on direct examination, and was cross-examined about many of them. Furthermore, at the end of trial, the court expressly stated that it was going to "go through" the exhibits and base its decision on them and "the exhibits and the pleadings that [the parties] filed." Copelin did not object to this procedure. On this record, we are satisfied that the parties and the court considered Mahil's complaint, its attached exhibits, and her updated list of damages as having been admitted in evidence and suitable for the court's consideration in deciding the case.

On a final note, we observe that Copelin argues in his reply brief that "the trial court's prejudgement [sic] interest ruling confirms the absence of evidentiary support" for Mahil's damages claim. Although Copelin implies in his reply brief that he is challenging the trial court's award of prejudgment interest, we do not consider the challenge because it is not properly presented — it is not squarely raised under a subject heading in any of Copelin's briefs and is developed primarily in his reply brief, which deprived

18

Mahil the opportunity to respond. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [a brief must "[s]tate each point under a separate heading or subheading"]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [declining to address claims for which the appellant "has not provided the required separate headings," which "result[ed] in a disorganized and at times unintelligible legal discussion"]; *People v. Financial Casualty & Surety, Inc.* (2021) 73 Cal.App.5th 33, 42 ["For ' "[o]bvious reasons of fairness," ' issues ' "raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument." ' "].)

## IV. DISPOSITION

The judgment is affirmed. Mahil is entitled to her costs on appeal.


RUBIN, J.

WE CONCUR:


BUCHANAN, Acting P. J.


KELETY, J.

19